## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JESSICA LEWIS-MONEY,                          :

          Plaintiff,                   :
                                   Case No. 3:10CV0193

  vs.                                         :

                                   District Judge Thomas M. Rose

MICHAEL J. ASTRUE,                            :    Magistrate Judge Sharon L. Ovington
    Commissioner of the Social
    Security Administration,                  :

          Defendant.                       :

## REPORT AND RECOMMENDATIONS[1]

### I.  <u>Introduction</u>

Plaintiff Jessica Lewis-Money sought financial assistance from the Social

Security Administration by applying for Supplemental Security Income ["SSI"]

on June 6, 2006, claiming to be disabled due to bipolar disorder, asthma, seizures,

a cyst on her knee, and a bad back.  (Doc. #6, *Page ID*## 121-26, 137).  Her

application was denied during initial administrative proceedings.  She then was

provided a hearing before Administrative Law Judge ["ALJ"] Amelia G.

Lombardo.  On October 28, 2008, the ALJ issued a decision concluding that

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

Plaintiff was not under a "disability" within the meaning of the Social Security Act, and therefore was not eligible for SSI.  (Doc. #6, *Page ID*## 50-61).  The ALJ's decision and the resulting denial of benefits became the final decision of the Social Security Administration.  Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff now is due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #13), Plaintiff's Reply (Doc. #14), the administrative record (Doc. #6), and the record as a whole.

Plaintiff seeks an Order reversing the ALJ's decision and granting her benefits because she purportedly cannot sustain the stress of an ordinary work environment.  At a minimum, Plaintiff seeks a remand of this case to the Social Security Administration to correct certain claimed errors.  The Commissioner seeks an Order affirming the ALJ's decision.

II.  **Background**

Plaintiff was 22 years old at the time of the administrative decision, and thus was considered to be a "younger person" for purposes of resolving her SSI claim.  *See* 20 C.F.R. § 416.963(c); (*see also* Doc. #6, *Page ID*## 59, 132).  She has a limited education, having completed only the eighth grade.  *See* 20 C.F.R. § 416.964(b)(3); (*see also* Doc. #6, *Page ID*## 59, 145).  Plaintiff has no past relevant

2

work.  (Doc. #6, *Page ID*## 59, 138, 151-58).

Plaintiff testified at the administrative hearing[2] that she is disabled due to post-traumatic stress disorder, bipolar disorder, depression, and a mood disorder.  (Doc. #6, *Page ID*# 71).  She reported seeing a therapist every two weeks and being in therapy since the age of 13.  (*Id*.).  She experienced nightmares, flashbacks, and severe irritability.  (Doc. #6, *Page ID*# 72).  She would get angry and hit people.  (*Id*.).  She once ran someone over with her car, although the incident never was reported to the police.  (*Id*.).  Plaintiff also testified that she did not like to be around a lot of people at one time.  (*Id*.).  When she told her doctors that treatment wasn't helping, they suggested that she continue therapy even if she chose not to talk, and continue taking her medications because they "calm[ ] me down a little bit."  (*Id*.)

Plaintiff relies on the opinions of her treating psychiatrist, Kalpana Vishnupad, M.D., and her treating therapist, Mary M. Dailey, LISW ["therapist Dailey"].[3]  Plaintiff had treated with Dr. Vishnupad since December 2005, and

---

[2]  Because the alleged errors raised by Plaintiff do not implicate the vocational expert testimony also presented at the administrative hearing, the Court has not summarized that testimony.

[3]  In her Statement of Errors, Plaintiff does not challenge the ALJ's findings with respect to her alleged exertional impairments.  Accordingly, the Court will focus its review of the medical evidence on Plaintiff's alleged mental impairments.

saw therapist Dailey from September 2005 through October 2006, then again

beginning in April 2007, at Mental Health Services of Clark County.

When seen initially by therapist Dailey in September 2005, Plaintiff

reported disturbed sleep and appetite, depression, and problems with anger and

irritability.  (Doc. #6, *Page ID*# 258).  Plaintiff also reported that she had poor

ability to concentrate and had difficulty focusing.  (Doc. #6, *Page ID*# 260).  On

mental status examination, Plaintiff's mood appeared depressed and her affect

was blunted. Her speech was slow and terse.  Her thought content appeared to

be vague and self-defeating.  Therapist Dailey reported that Plaintiff appeared to

be guarded and somewhat paranoid.  Her insight and judgment were noted to be

fair.  (Doc. #6, *Page ID*# 262).  Therapist Dailey diagnosed major depression,

recurrent, dysthymia, rule out bipolar disorder and personality disorder, not

otherwise specified.  (*Id*.).  She assigned Plaintiff a current Global Assessment of

Functioning ["GAF"] [4] score of 55.[5]  Plaintiff was scheduled for a psychiatric

---

[4]  Health care clinicians perform a GAF to determine a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness.  It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 988 n.1 (6th Cir. 2009); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at pp. 32-34.

[5]  A GAF of 55-60 indicates "moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  *See* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at p. 34 ("DSM-IV-TR").

consultation and offered solution-focused psychotherapy.  (*Id.*).

Plaintiff was seen by therapist Dailey for individual therapy.  (Doc. #6, *Page ID*## 248-54).  Plaintiff's mood continued to be irritable.  (Doc. #6, *Page ID*# 253).  When she brought her three year old to a session with her, therapist Dailey noted that Plaintiff was easily frustrated with her daughter and unable to set appropriate limits.  (Doc. #6, *Page ID*# 251).  Plaintiff continued to report problems with being around people, especially her family.  (Doc. #6, *Page ID*# 250).  She exhibited difficulty trusting others and continued to be defensive and guarded.  (Doc. #6, *Page ID*# 248).

In November 2005, therapist Dailey opined that Plaintiff was not significantly limited in her ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; was moderately limited in her ability to remember locations and work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, sustain an ordinary routine without special supervision, and travel in unfamiliar places or use public transportation; was markedly limited in five areas, including but not limited to her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, make simple work-related decisions, and complete a normal workday

and workweek without interruptions; and was extremely limited in seven areas, including but not limited to her ability to interact appropriately with the general public, understand and remember detailed instructions, carry out detailed instructions, and maintain attention and concentration for extended periods. (Doc. #6, *Page ID*## 464-65). Therapist Dailey explained that Plaintiff was being treated for a major depressive episode (with bipolar disorder being ruled out); that her mood was further impaired by a history of anger, irritability, and a low tolerance for stress; and that she "would have difficulty being able to be employed with current symptoms." (Doc. #6, *Page ID*# 465). She also opined that Plaintiff could be unemployable for a period between 30 days and nine months. (*Id*.).

Plaintiff continued to see therapist Dailey for counseling approximately every three weeks through June 2006 (Doc. #6, *Page ID*## 236-49), and again approximately once per month from April 2007 until November 2007. (Doc. #6, *Page ID*## 493-98). Plaintiff continued to report being irritable and edgy and wanting to get into physical fights with others, but noted that she "thought" before she acted. (Doc. #6, *Page ID*# 246). Therapist Dailey noted that Plaintiff continued to be suspicious and distrustful of others. (*Id*.). A month later, Plaintiff appeared to be angry and irritable. Her affect also was angry. She

slumped in her chair and her eyes were half-closed.  She reported being "pissed off."  (Doc. #6, *Page ID*# 244).

On December 9, 2005, Plaintiff was seen by psychiatrist Dr. Vishnupad, who prescribed Wellbutrin, Celexa, and Zoloft.  (Doc. #6, *Page ID*# 247).   In February 2006, Dr. Vishnupad changed Plaintiff's medications to Celexa, Abilify, and Trazdone.  (Doc. #6, *Page ID*# 255).

Dr. Vishnupad reported on February 24, 2006, that Plaintiff was being treated for a bipolar disorder with symptoms including disturbed sleep pattern, mood swings, irritability and agitation.  He noted that Plaintiff was impulsive and had a long history of angry outbursts.  Dr. Vishnupad opined that Plaintiff would have difficulty working in a situation where she was subject to constructive criticism or added stress.  (Doc. #6, *Page ID*## 430-31).  Dr. Vishnupad further opined that Plaintiff was extremely limited in her ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Dr. Vishnupad opined that Plaintiff was

markedly limited in her ability to perform activities within a schedule or maintain regular attendance; make simple work-related decisions; complete a normal workday or workweek without interruption from psychological symptoms; ask simple questions or request assistance; and respond appropriately to changes in the work setting. (*Id.*). Dr. Vishnupad concluded that Plaintiff would be unemployable for 12 months or longer. (Doc. #6, *Page ID*# 431).

In March 2007, Dr. Vishnupad opined that Plaintiff was not significantly limited in her ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. She was moderately limited in four areas; markedly limited in five areas; and extremely limited in 10 areas, including the ability to interact appropriately with the general public. (Doc. #6, *Page ID*## 428-29). Dr. Vishnupad explained that Plaintiff was being treated for bipolar disorder, and was "impulsive, agitated and irritable. She remains defensive and guarded." (*Id.*). Dr. Vishnupad also opined that Plaintiff would "have difficulty accepting constructive criticism from supervisors/others. Does not deal well in stressful situations . . . " (*Id.*). He concluded Plaintiff would be unemployable for at least 12 months. (*Id.*).

In April 2007, Dr. Vishnupad and therapist Dailey jointly completed interrogatories and a Psychiatric Review Technique. (Doc. #6, *Page ID*##

8

446-463).  They noted that Plaintiff would be unable to sustain the mental demands of work on a regular and continuing basis.  (Doc. #6, *Page ID*## 449-455).  Dr. Vishnupad and therapist Dailey also indicated that Plaintiff had marked restrictions of activities of daily living, extreme difficulties in maintaining social functioning, marked deficiencies of concentration, persistence or pace, and four or more episodes of decompensation.  (Doc. #6, *Page ID*# 463).

The Commissioner relies on the opinions of George Schulz, Ph.D., who evaluated Plaintiff at the request of the Ohio Bureau of Disability Determination in July 2006.  (Doc. #6, *Page ID*## 271-76).  Plaintiff told Dr. Schulz that she was able to feed, bathe, and dress herself; take care of her daughter; socialize with extended family on a daily basis; socialize with friends monthly; perform all household chores, including cooking and grocery shopping; and keep up with her financial obligations.  (Doc. #6, *Page ID*# 273).   On mental status examination, Plaintiff's mood was euthymic and affect was appropriate and congruent.  Plaintiff reported difficulty with sleep.  She also had experienced feelings of anxiousness, depression, worthlessness, and helplessness.  Plaintiff reported difficulty concentrating and worrying a great deal of the time.  (*Id.*).  Dr. Schulz reported that Plaintiff's long-term memory was within the borderline range, as was her fund of knowledge and her ability to abstract.  Dr. Schulz

9

diagnosed a bipolar II disorder, borderline personality disorder, and borderline intellectual functioning.  (Doc. #6, *Page ID*# 274).  Dr. Schulz assigned Plaintiff a current GAF score of 58.  Dr.  Schulz opined that Plaintiff's ability to relate to others, including fellow workers and supervisors, was minimally impaired; her ability to understand, remember, and follow instructions was moderately impaired; her ability to maintain attention and concentration to perform simple, repetitive tasks was minimally impaired; and her ability to withstand the stress and pressures associated with day-to-day work activity was moderately impaired.  (Doc. #6, *Page ID*## 275-76).

## III.    THE "DISABILITY" REQUIREMENT & ADMINISTRATIVE REVIEW

### A.    <u>Applicable Standards</u>

The Social Security Administration provides SSI to indigent individuals, subject to several eligibility requirements.  Chief among these, for purposes of this case, is the "disability" requirement.  To receive SSI, an applicant must be a "disabled individual."  42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity.  42

U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.  An SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).

**B.     Social Security Regulations**

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence.  (*See* Doc. #6, *Page ID*## 50-52); *see also* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.     Is the claimant engaged in substantial gainful activity?

2.     Does the claimant suffer from one or more severe impairments?

3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.     Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.     Considering the claimant's age, education, past work experience, and residual functional

capacity, can the claimant perform other work
available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279

F.3d 348, 354 (6th Cir. 2001).

C.     **The ALJ's Decision**

At Step 1 of the sequential evaluation, ALJ Lombardo found that Plaintiff

had not engaged in substantial gainful activity since June 6, 2006, the alleged

onset date.  (Doc. #6, *Page ID*# 53).

The ALJ found at Step 2 that Plaintiff had the severe impairments of

seizure disorder, bipolar disorder, and dysthymia.  (*Id.*).  The ALJ determined at

Step 3 that Plaintiff did not have an impairment or combination of impairments

that met or equalled the level of severity described in Appendix 1, Subpart P,

Regulations No. 4.  (Doc. #6, *Page ID*# 56).

At Step 4, the ALJ found that Plaintiff retained the residual functional

capacity ["RFC"] to perform a full range of work at all exertional levels, including

heavy work, but was limited to jobs that would not require her to work at

unprotected heights or to climb ladders, ropes, or scaffolds.  (Doc. #6, *Page ID*#

56).  She further was limited to jobs that would not involve exposure to hazards.

(*Id.*).  The ALJ determined that Plaintiff was mentally restricted to unskilled work

that would involve minimal contact with the general public and coworkers and

minimum supervision. (*Id.*). The ALJ next found that Plaintiff has no past

relevant work, but could perform a significant number of jobs in the national

economy. (Doc. #6, *Page ID* # 59). That assessment, along with the ALJ's findings

throughout her sequential evaluation, led her ultimately to conclude that Plaintiff

was not under a disability, and hence not eligible for SSI. (Doc. #6, *Page ID* # 60).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: "whether the

ALJ applied the correct legal standards and whether the findings of the ALJ are

supported by substantial evidence." *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399,

406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir.

2007). Review for substantial evidence is not driven by whether the Court agrees

or disagrees with the ALJ's factual findings or by whether the administrative

record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of

Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d

388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the

substantial-evidence standard is met – that is, "if a 'reasonable mind might accept

the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at

407 (quoting *Warner v. Comm'r of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004)).

Substantial evidence consists of "more than a scintilla of evidence but less than a

13

preponderance . . ." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.    DISCUSSION

### A.    <u>Plaintiff's Contentions</u>

Plaintiff challenges the adequacy of the RFC assessment, specifically arguing that the ALJ erred in evaluating the opinions of treating psychiatrist Kalpana Vishnupad, M.D., and treating therapist Mary M. Dailey, LISW.  (Doc. #8 at 12).  Plaintiff also argues that the ALJ ignored significant aspects of the record that supported those treating medical source opinions, including a longitudinal treatment record documenting little improvement over time.  (*Id.* at 13-17).  Plaintiff further contends that the psychological consultant found greater

limitations than the ALJ.  (*Id.* at 19).

**B.** **Medical Source Opinions**

      *1.*    *Treating Medical Sources*

The treating physician rule, when applicable, requires an ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor, a one-time examining physician or psychologist, or a medical advisor who testified before the ALJ.  *Blakley,* 581 F.3d at 406; *see Wilson*, 378 F.3d at 544.  A treating physician's opinion is given controlling weight only if both well supported by medically acceptable data and not inconsistent with other substantial evidence of record.  (*Id.*).

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."  *Blakley,* 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544).  More weight generally is given to the opinions of examining medical sources than to the opinions of non-examining medical

sources.  *See* 20 C.F.R. § 416.927(d)(1).  Yet the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight.  *See infra*.

2.   <u>Non-Treating Medical Sources</u>

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  SSR 96-6p. Nevertheless, the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source.  *See id*. at **2-3.  The Regulations explain that "[i]n deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."  20 C.F.R. § 416.927(b).  To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in Section 416.927(d), including, at a minium, the factors of supportability, consistency, and specialization.  *See* 20 C.F.R. § 416.972(f); *see also* SSR 96-6p at **2-3.

**C.**   **<u>Discussion</u>**

Plaintiff argues that the ALJ erred by not giving controlling or deferential weight to Dr.  Vishnupad's and therapist Dailey's opinions regarding her mental

16

limitations.  (Doc. #8 at 12).  Although the ALJ determined that Dr. Vishnupad's and therapist Dailey's opinions that Plaintiff is "unemployable" did not warrant controlling or even deferential weight (*see* Doc. #6, *Page ID*# 57), the ALJ completely ignored the specific restrictions identified by Dr. Vishnupad and therapist Dailey as described above.  (*See* Doc. #6, *Page ID*## 428-29, 430-31, 446-63, 464-65).  For the reasons that follow, the Court finds the ALJ's decision is not supported by substantial evidence and should be reversed and remanded for further proceedings.

The ALJ's failure to explain what factors she considered, if any, in assessing the specific limitations identified by Dr. Vishnupad and therapist Dailey was contrary to the reason-giving requirement specified in the Commissioner's Regulations.  *See Blakley*, 581 F.3d at 406, *Wilson*, 378 F.3d at 544-45.  "[T]he ALJ must provide 'good reasons' for discounting treating physicians' opinions, reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Rogers*, 486 F.3d at 242.  This reason-giving requirement accomplishes two goals:

> First, the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an

> administrative bureaucracy that she is not, unless some
> reasons for the agency's decision is supplied. Second,
> the explanation ensures that the ALJ applies the treating
> physician rule and permits meaningful appellate review
> of the ALJ's application of the rule.

*Id.* at 242-43 (quoting in part *Wilson*, 378 F.3d at 544) (internal punctuation and citations omitted).

Dr. Vishnupad's and therapist Dailey's opinions were not "so patently deficient" that the Commissioner could not possibly credit them. *See Wilson*, 378 F.3d at 547. Those opinions are supported by treatment records documenting Plaintiff's depression, irritable mood, and low frustration tolerance. (*See* Doc. #6, *Page ID*## 236-54, 421-22, 475-98, 514-19). Even the ALJ acknowledged this condition in finding Plaintiff to be restricted to unskilled work that would involve minimal contact with the general public and coworkers, and minimal supervision. (Doc. #6, *Page ID*# 56 (Finding 4)).

The only reference to Dr. Vishnupad's and therapist Dailey's treatment records found in the ALJ's opinion is set forth in a single sentence: "Chart notes reflect a positive response to medication and treatment (Exhibits 4F, 25F, and 32F)." (Doc. #6, *Page ID*# 54). The ALJ does not explain how any particular fact in the record purportedly is inconsistent with Dr. Vishnupad's and therapist Dailey's opinions or Plaintiff's description of her limitations.

18

Turning next to the six-factor analysis that the ALJ should have applied to Dr. Vishnupad's opinions, *see Blakley,* 581 F.3d at 406; *Wilson,* 378 F.3d at 544, it is clear that the credibility of Dr. Vishnupad's opinion is enhanced by the "length of the treatment relationship" and "specialization" criteria.  At the time of the hearing, Dr. Vishnupad had treated Plaintiff for nearly three years, and also had treated Plaintiff as an adolescent for an in-patient admission in October 1999.  (Doc. #6, *Page ID* # 447).  Additionally, as a psychiatrist, Dr. Vishnupad is a specialist in the type of psychological impairments at issue in this case.

As to "the nature and extent of the treatment relationship" between the doctor and the claimant, *see id.,* Dr. Vishnupad's relationship with Plaintiff is that of a treating psychiatrist who engaged in bi-monthly sessions with Plaintiff, so those criteria also would seem to bolster the weight due his opinion.  The final criterion – "consistency" with other record evidence, *see id.* – also is present in this case.  While the records reflect that the severity of Plaintiff's mental impairments did wax and wane over the course of time, a review of the longitudinal record shows that Plaintiff made only marginal progress during the years that she was treated by Mental Health Services of Clark County, despite her compliance with medications and treatment recommendations.  Furthermore, Dr. Vishnupad's observations and conclusions are largely consistent with those of

Dr. Schulz, who examined Plaintiff at the request of the Administration, and with therapist Dailey's progress notes.  (*See* Doc. #6, *Page ID*## 236-53, 271-76, 421-22, 475-98, 514-19).  Accordingly, the ALJ erred by failing to accord significant weight to Dr. Vishnupad's opinions.

In this case, the ALJ never even mentioned the specific limitations identified by Dr. Vishnupad in his February 2006, March 2007 or April 2007, reports, much less explained why she declined to adopt those limitations.  The ALJ's failure to provide good reasons for rejecting Dr. Vishnupad's opinions was not harmless error.  "[W]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion."  *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 545).

At the request of the Administration, Dr. Schulz conducted a thorough consultative psychological examination of Plaintiff on July 31, 2006, as is summarized above.  (*See* Doc. #6, *Page ID*## 271-76).  The ALJ also failed to discuss what weight should be given to Dr. Schulz's report.  Once again, this omission leaves the Court unable to determine whether the ALJ's decision is

supported by substantial evidence.  *See Hurst v. Sec'y of Health & Human Servs.*,
753 F.2d 517, 519 (6th Cir. 1985).  The Regulations require that the rationale for a
disability decision "be written so that a clear picture of the case can be obtained."
SSR 82-62 at *4.  An ALJ's decision must "follow an orderly pattern and show
clearly how specific evidence leads to a conclusion." *Id.*; *see also Morris v. Sec'y of
Health & Human Servs.*, 845 F.2d 326 [table], 1988 WL 34109, at *2 (6th Cir. 1988)
(*per curiam*) (noting, in reliance on *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981),
that when an ALJ fails to mention relevant evidence in his or her decision, "the
reviewing court cannot tell if significant probative evidence was not credited or
simply ignored").

Plaintiff has treated with therapist Dailey since September 2005, and
usually saw her every two weeks.  (Doc. #6, *Page ID*## 236-54, 258-63, 475-98).
The ALJ completely rejected therapist Dailey's opinion based on her perception
that such opinion was inconsistent with Plaintiff's mental health treatment
records, which showed a positive response to medication and treatment.  In fact,
however, therapist Dailey's opinion is consistent with those of Drs. Vishnupad
and Schulz, and is supported by her progress notes and those of Dr. Vishnupad.
In addition, therapist Dailey's long-term and intensive treatment history with
Plaintiff reflects favorably on her opinion under the criteria set forth in SSR 06-3p.

21

It therefore was improper for the ALJ to accord no weight to therapist Dailey's opinion.

## VI. REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, nor is the evidence of a disability strong while contrary evidence is weak. *See id*. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g), due to the problems discussed *supra*.

On remand, the ALJ should be directed to evaluate the evidence of record,

including the medical source opinions, under the applicable legal criteria

mandated by the Commissioner's Regulation and Rulings and by case law; and

to evaluate Plaintiff's disability claim under the required five-step sequential

analysis to determine anew whether Plaintiff was under a disability and whether

her application for SSI should be granted.

**IT THEREFORE IS RECOMMENDED THAT:**

1.   The ALJ's decision be VACATED;

2.   No finding be made regarding whether Plaintiff is under a "disability" within the meaning of the Social Security Act;

3.   This matter be REMANDED to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4.   The case be TERMINATED on the docket of this Court.

July 1, 2011

        s/ Sharon L. Ovington

Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).